UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | No.   02 CR 287-2 |
| vs. | ) | |
| | ) | Judge James B. Zagel |
| PAUL M. VAN EYL | ) | |

**GOVERNMENT'S MOTION IN LIMINE**

The United States of America, by Patrick J. Fitzgerald, United States Attorney, requests this Honorable Court to enter an order *in limine* barring the defendant from introducing evidence that the collections operation at First Merchants Acceptance Corporation was ineffective or "broken," or from introducing evidence or argument that the alleged ineffectiveness of the company's collections operation excused, or constituted a defense to, manipulation of the company's financial reporting.

**1.    Factual Background**

The defendant is charged in a twelve-count indictment with fraud by wire, securities fraud, making false statements in a Form 10-K, bank fraud, and making false statements to financial institutions. The substance of the charge is that the defendant, along with Mitchell Kahn, fraudulently manipulated the financial reporting of First Merchants Acceptance Corporation (FMAC), a publicly held corporation, which was engaged in making automobile loans in the sub-prime market. The indictment charges, and the evidence at the previous trial established, that the defendants misrepresented the collections and delinquency experience by the following schemes:

a.   Causing delinquent accounts to be made "current" by recording payments which they knew the customer had not in fact made;

    b.  Determining each month, in advance, what level of delinquent accounts could be charged off, without regard to actual delinquency experience, or the stated charge-off policies of FMAC;

    c.  Granting mass "deferrals" to delinquent accounts, in order to carry them as current on FMAC's books when they were not current, and to avoid charging them off, contrary to the publicly stated charge-off policies of FMAC;

    d.  Carrying "skip" accounts on the books of FMAC as repossessions; and

    e.  Carrying repossessed vehicles on the books of FMAC at the full value of the credit account they secured, rather than writing them down as prescribed by the company's stated policies.

  The effect of these manipulations was to falsely and artificially increase the company's apparent earnings and assets, and to understate the company's delinquency rate, a key indicator of performance for a company in FMAC's market. These misstatements enhanced the attractiveness of the company to both the company's own lenders and to the investing public, thereby preventing them from making an assessment of the risks of lending to, or investing in, FMAC on the basis of accurate information.

  At the previous trial, a good deal of time was spent by the defense in trying to show that the company's collections process was ineffective, or "broken," and that this experience was the fault of an allegedly inept collections manager. The theory of the defense was that FMAC's loan portfolio was of better quality than would be surmised from its above-average delinquency rate. According to the defense, altering the account information brought the company's financial

statements to a point where they better reflected what the defense asserts to be the "true" quality of the loan portfolio.

It is this evidence and argument that should be excluded.

### 2. **Applicable Law**

It is well-established in this Circuit that in order to establish a defense of good faith, a defendant charged with investment fraud must prove that he actually believed the information he provided to the investors. United States v. Mabrook, 301 F.3d 503, 509 (7th Cir. 2002). It is not a defense that the defendant honestly believed that he would ultimately be able to perform, and a belief that his company would eventually be successful "is not relevant because that belief did not negate the falsity of his representations to his investors." *Ibid*.

This principle has been applied repeatedly, both in instructing juries and in excluding irrelevant evidence and argument at trial. In United States v. Stafford, 136 F.3d 1109, 1112 (7th Cir. 1998), the defendants were prosecuted for soliciting advance fees in exchange for a promise to procure low-interest loans from impressive-sounding, but fictitious, sources. The district court excluded defense evidence that, despite admitted misrepresentations to the victims, the defendants really had intended to procure the multi-million dollar loans they had promised them. The Seventh Circuit affirmed, stating that the fraud lay in the making of misrepresentations about the defendants' experience and connections, and extraction of the advance fees by lies.

Similarly, in United States v. Gole, 158 F.3d 166, 168 (2nd Cir. 1998), the defendant was charged with having lied about his income, in order to prevent a decline in his pension as a fireman. The District Court was held properly to have excluded defense evidence that the Pension Bureau had applied an incorrect formula in calculating the pension reduction, to show that the

defendant's misrepresentations had merely prevented an underpayment. To accept this theory of "self-help," the Court held, would provide pension beneficiaries "carte blanche simply to lie to obtain those benefits." 158 F.3d at 168.

In United States v. Dunn, 961 F.2d 648, 650-1 (7th Cir. 1992), the Court of Appeals upheld a supplemental jury instruction that "it is no defense that the Defendant believed that [his company] would eventually succeed." The Court held that to prove the specific intent element of mail fraud, the government must prove that the defendant knowingly made a material misrepresentation or omission. The Court went on to explain, however, that a defendant's "good faith belief that [his company] would be successful in the long-term was not relevant to the element of specific intent because that belief did not negate the falsity of the misrepresentations or his knowledge that the statements were false when made."

The District Court in United States v. Harvey, 959 F.2d 1371, 1374-5 (7th Cir. 1992), had granted the government's motion *in limine* to bar evidence that the defendant had tried to procure funds from sources other than the people he had falsely assured the victims he would easily obtain money from. The Court of Appeals agreed that such evidence was irrelevant. "If those statements were false, and [the defendant] did not in good faith believe they were true," the Court explained, "his belief that he could procure funds from other sources, and his effort to do so, were no defense." 959 F.2d at 1375.

### 3. Discussion

The above principles have been applied to the specific facts of this very case by another judge of this Court in *Securities and Exchange Commission v. Kahn, et al.*, 2002 WL

1163723 (N.D. Ill.) (Nordberg, J.). The Securities and Exchange Commission (SEC) brought suit against the defendant and co-defendant, Mitchell Kahn, for the precise conduct which underlies the indictment in this case. In entering partial summary judgment in favor of the SEC, Judge Nordberg thoroughly discredited the defense Van Eyl relied on in his first criminal trial:

> Defendants argue that they were justified because the actual charge off rate was in fact "inaccurate," "inflated," and "misleading" because FMAC's loan portfolio was of as good or better quality than the industry average. This contention defies logic. The level of charge offs being incurred before Defendants began the various deferral stratagems was, by definition, accurate because it reflected the *actual* number of accounts being charged off. Defendants attempt to challenge this by focusing on one component of the charge off equation–the quality of the loan portfolio. However, in doing so, Defendants disregard the other component, the quality of the corporation's collection capabilities, which their own briefs claim is critical in dealing with subprime borrowers. The level of FMAC's charge offs increased because FMAC's collection system was "broken" or nonexistent. In altering the account information to reflect the alleged "true" quality of the loan portfolio, the Defendants were really concealing the abysmal quality of FMAC's collection system. Anyone reviewing FMAC's financial information would undoubtedly be interested in the quality of the loan portfolio; they would also need to know if the collection system, the mechanism by which gain on the portfolio will be realized, is functioning well or "broken." 2003 WL 1163723, *10.

The Court specifically found that a belief that the portfolio was better than it looked could not justify a defense of good faith:

> Defendants actions focused on making the accounts look as Defendants believed they *should* look, if all was going well. The fact remains that all was not going well, as the Defendants concede, and the accounts were not presented as they actually existed. Thus, even if Defendants actually believed that they could ultimately fix the collection system and make the accounts perform as well as they were (falsely) presented, a defense of good faith is unavailable.

Since the existence of a problem with FMAC's collections operation could not legally justify the defendant in lying to lenders and investors about the company's past collections results, whether or not the collections operation was "broken" is irrelevant, and, therefore, inadmissible. F.R.E. Rules 401, 402. If the defendant and Mitchell Kahn had believed that the problem was temporary or remediable, they should have reported the company's experience accurately, and then explained it in a footnote to the financial statements.

The evidence should also be excluded under Rule 403. When a jury of laymen, expected to make decisions on matters within the arcane field of public accounting, is repeatedly exposed to an excuse which is not, as a matter of law, an excuse, the possibility of jury confusion is very high. Moreover, the experience of the last trial, in which defense counsel was drawn into wrangles with the former collections manager about the quality of FMAC's collections effort, shows the inadvisability of leading the jury into an irresolvable dispute over a collateral matter.

Respectfully submitted,

**PATRICK J. FITZGERALD**
United States Attorney

By:  /s/ Gillum Ferguson
**GILLUM FERGUSON**
Assistant U. S. Attorney
219 South Dearborn Street
Chicago, Illinois 60604
(312) 353-1413

## **CERTIFICATE OF SERVICE**

The undersigned Assistant United States Attorney hereby certifies that the following document:

### **GOVERNMENT'S MOTION IN LIMINE**

was served on November 17, 2006, in accordance with FED. R. CIV. P. 5, LR5.5, and the General Order on Electronic Case Filing pursuant to the district court's Electronic Case Filing (ECF) system as to ECF filers.

                              By:    /s/ Gillum Ferguson
                                            Assistant United States Attorney
                                            219 South Dearborn Street
                                            Chicago, Illinois 60604
                                            (312) 353-1413